UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CEDRIC LEE GOLIDAY,

          Petitioner,

v.

RANDY REWERTS,

          Respondent.

_____/

Case No. 1:21-cv-434

Honorable Robert J. Jonker

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>**Discussion**</u>

## I.    **Factual allegations**

Petitioner Cedric Lee Goliday is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On January 11, 2019, following a three-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of criminal sexual conduct—assault with the intent to commit sexual penetration (CSC-assault), in violation of Mich. Comp. Laws § 750.520g, and second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. On March 25, 2019, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 8 years, 4 months to 20 years for CSC-assault, and 11 years, 9 months to 30 years for CSC-II.[1]

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

> At trial, the victim testified that defendant was the uncle of her friend with whom she had been living. On August 25, 2018, defendant volunteered to drive the victim from Ann Arbor to Chicago. During the drive, defendant made numerous comments about how they should have sex at a hotel, an offer the victim expressly declined. Despite this rejection, defendant stopped at a hotel in Benton Harbor in the afternoon. The victim did not want to stop and rejected defendant's advances. Defendant exited the vehicle and the victim locked the door. Defendant attempted to reach in through the car window and pulled the victim's hair "really hard." The victim cut defendant's hand with a small pocket knife in response. According to the victim, defendant laughed and walked into the hotel. She had no money and no other way to Chicago. Eventually, defendant returned with a paper slip with the hotel room number on it.

---

[1] Petitioner was also convicted of domestic violence and a drug possession offense. (J. of Sentence, ECF No. 3-2, PageID.227–228.) For those offenses, however, Petitioner was sentenced to the time he was detained before sentencing. Because Petitioner was not in custody for those offenses at the time he filed his petition, they are not at issue in his petition.

The victim ventured up to the hotel room to use the bathroom and to persuade defendant to continue driving her to Chicago. She testified that she was "upset." Defendant "lunged" at the victim and she fought back. Throughout their altercation, defendant was angry and continued to talk about having sex. He took off his belt and hit her with it before he pushed her onto the bed and attempted to unzip her pants. He held her down. He also ripped the victim's shirt and began to lick her breasts. Defendant also bit into her back. The victim yelled "rape" and demanded that defendant stop. Once defendant and the victim were separated, she smashed a microwave oven plate into defendant's face. Throughout, the victim asserted that she "made it very clear" that she did not want to engage in any sexual behavior.

A guest in a neighboring hotel room overheard the altercation. She recalled hearing "squealing" and "yelling," and a woman stating, "He hit me. He bit me. He beat me." The guest called the front desk to report the disturbance. Her husband also testified that he heard the struggle and recalled defendant saying "I will kill you, bitch." The hotel manager, who responded to the scene, recalled the victim appeared "very scared" and was yelling that "[s]omeone's trying to rape me." The manager also testified that, in contrast, defendant appeared sweaty and his belt was undone. The manager called 911 and described how the victim "looked like she had just been through a bad ordeal, a fight."

Moreover, photographs of the hotel room introduced at trial demonstrated that the phone was ripped from the wall, the microwave on the ground, the television broken, a lampshade dented, broken hangers strewn about, the drapes bloody and ripped, and bedding bloodstained. Another hotel employee testified that she, too, saw defendant "pulling his pants up and messing with his belt." He "was mad" and was breathing heavily. The victim's clothes were ripped and bloody, her hair disheveled, and she was crying. The employee also observed scratch and bite marks. The victim told her that defendant "tried to rape her." At trial, an inmate serving a sentence on an unrelated case also testified that defendant had told him that "he was trying to get [the victim] to have sex with him and she kept turning him down," and that he enjoyed her resistance. The inmate described defendant as "bragging" and also remarked that defendant admitted to whipping the victim with his belt.

One of the law enforcement officers who responded to the scene testified that—in exchanges captured on body camera—defendant admitted that he licked the victim's breasts and held her down by her neck. Defendant also admitted to ripping the victim's shirt, that she was "screaming rape," and that he "kind of" liked that. Defendant believed that the victim owed him "sex as a payment" for driving her. According to the officer, defendant also threatened that the victim would not show up for court and denied that he raped her. Defendant did admit, however, that he was upset with the victim's rejection and that he hit her with his belt, but only

in self-defense.  Another law enforcement officer testified that defendant admitted that "he had feelings for her."

Defendant testified on his own behalf.  He acknowledged that she did not want to go to the hotel and that she did not want to have sex.  He believed that the victim, if she felt pressured, could have left.  He asserted that she instigated their fight by "swinging" at him.  He admitted to licking her breasts even though she repeatedly told him that sex "wasn't going to happen."  He had anticipated that he would offer the victim money in exchange for sex because she did not have a job and "might need some."  He "thought she was playing" when she yelled rape.  Defendant also again admitted that he held her down but maintained that they were "playing around."

(Mich. Ct. App. Op., ECF No. 3-2, PageID.157–158.)

Petitioner directly appealed his convictions and sentences, raising issues in the brief he filed with the assistance of counsel, (Pet'r's Mich. Ct. App. Br., ECF No. 3-2, PageID.111–130), and in a *pro per* supplemental brief, (Pet'r's *Pro Per* Supp. Br., ECF No. 3-2, PageID.132–155).  By opinion issued August 13, 2020, the Michigan Court of Appeals rejected Petitioner's challenges to his convictions.  (Mich. Ct. App. Op., ECF No. 3-2, PageID.157–166.)

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 3-2, PageID.206–224; Pet'r's Mich. Supreme Ct. Br., ECF No. 3-2, PageID.168–203.)  By order entered February 2, 2021, the supreme court denied leave to appeal.  (Mich. Order, ECF No. 3-2, PageID.230.)

On May 17, 2021, Petitioner timely filed his habeas corpus petition raising the following grounds for relief:

I.      Prosecutor failed to present sufficient evidence to sustain defendant's conviction.

II.     Did the trial counsel's defense strategy fail to reasonably provide Due Diligence?

III.    Did the general intent of the proceeding equal to prosecution misconduct?

4

IV.    Trial Court abused her discretion, by plainly and clearly commit[ing] many errors.  One of the many errors, was the improper instruction to the jury.

(Pet., ECF No. 1, PageID.6–10.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication

of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

The Court notes that Petitioner's presentation of his habeas issues is hampered by his writing style. Petitioner's word choice and sentence structure do not always make sense. These examples, taken from Petitioner's arguments with respect to each of his habeas issues, illustrate the problem:

For this reason petitioner's ought to illustrated victim Ms. Scott, during trial was led and suggestive, so the state's could sustain a convicting weight of influential role against juror's determining evidence and credibility.

[and]

It apparent, on the exist record that [trial counsel], unpersuasive illustrated arduousness as defense attorney, to be call sound trial strategy whether any necessity systematic preparedness of [trial counsel] lack simplest, as it's impossible to be anything other than prejudice.

[and]

Ordinarily, in a compulsory legal process of depriving one of life, freedom, and liberty, whether circumspect of discriminate and dispassionate without neutrality, it only constitute ambiguous depravity ambitions.

[and]

The petitioner's shall show cause to material grounds that certain factors bearing on issues previously mention, [w]hich are indisputable, or where reasonable mean could differ over the inferences, to be drawn from undisputed facts.

(Pet'r's Br., ECF No. 3, PageID.34, 54, 73, 86) (verbatim).

Although it is difficult to penetrate Petitioner's style to grasp his meaning, it is not impossible. The Court's conclusion that Petitioner's habeas issues lack merit does not follow from an inability to understand his claims. Rather, the principal failing of Petitioner's challenges is that the evidence against him was overwhelming. Petitioner's habeas claims nibble at the fringes of the case against him but the testimony of the victim and Petitioner were, for the most part, very consistent with respect to the facts that establish the CSC-II and CSC-assault charges. It is against that backdrop that the Court reviews Petitioner's claims.

### A.	Sufficiency of the evidence

Petitioner contends that there was insufficient evidence to permit the jury to find him guilty of CSC-II beyond a reasonable doubt.[2]  In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id*.  Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."

---

[2] In the Michigan appellate courts, Petitioner also challenged the sufficiency of the evidence supporting his domestic violence conviction.  (Mich. Ct. App. Op., ECF No. ECF No. 3-2, PageID.158–159.)  As explained above, however, the domestic violence conviction is not at issue in this proceeding.

*Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the *Jackson* standard to resolve Petitioner's sufficiency claim. (Mich. Ct. App. Op., ECF No. 3-2, PageID.158.) The court applied the standard as follows:

> We also conclude that the evidence unequivocally established the necessary elements for CSC-II. MCL 750.520c pertinently provides:
>
> > (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
> >
> > * * *
> >
> > (f) The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact.
>
> CSC-II "requires the prosecutor to prove 'sexual contact.'" *People v Lemons*, 454 Mich 234, 253; 562 NW2d 447 (1997), quoting MCL 750.520c(1). "The statute defines sexual contact . . . as touching that can reasonably be construed as being for the purpose of sexual arousal or gratification." *Id*. (quotation marks and citation omitted); MCL 750.520a(q). It can also include touching the clothing covering the victim's intimate areas. See MCL 750.520a(q). "The existence of force or coercion is to be determined in light of all the circumstances, and includes, but is not limited to, acts of physical force or violence, threats of force, threats of retaliation, inappropriate medical treatment, or concealment or surprise to overcome the victim." *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012) (quotation marks omitted); MCL 750.520b(1)(f) (defining circumstances satisfying force or coercion requirement).
>
> In this case, defendant admitted that he licked the victim's breasts for his sexual gratification. The victim's testimony established that defendant[] accomplished that sexual contact through the use of force, including whipping her with a belt, scratching, biting, ripping her shirt, and physically throwing her and holding her down by her neck. To the extent that defendant argues that there was

10

consent, the victim's testimony alone, if believed by the jury, was sufficient to prove otherwise. *People v Bailey*, 310 Mich App 703, 714; 873 NW2d 955 (2015); see also MCL 750.520h ("The testimony of a victim need not be corroborated[.]"). Defendant also repeatedly admitted that the victim did not want to go to the hotel and did not want to engage in sexual conduct with him. Moreover, several witnesses testified that the victim was yelling "rape" and extremely upset, while defendant appeared angry and was pulling up his pants. There was also evidence that defendant admitted that he became even more sexually aroused by the victim's struggles. We decline defendant's request to accept his version of events over the victim's, as we are obliged to view the evidence in the light most favorable to the prosecution. *Wolfe*, 440 Mich at 515-516.

(Mich. Ct. App. Op., ECF No. 3-2, PageID.158–159) (footnote omitted).

Petitioner's sufficiency challenge in this Court mirrors the challenge he raised in the state appellate courts. Petitioner argues that the evidence against him was false and/or manufactured, that the evidence was not credible, and that other credible evidence that favored his acquittal—specifically hotel security and police body-cam footage—was not introduced.

Even if there were evidence that supported Petitioner's claim that he did not commit CSC-II, that evidence is immaterial under the *Jackson* standard. Moreover, this Court is not free to invade the province of the jury and make credibility determinations that are contrary to those obviously made by the jurors. In essence, Petitioner asks the Court to disregard the *Jackson* standard—to view the evidence in a light that favors him, to draw inferences that evidence that was not even admitted favored him, to find him credible, and to find the witnesses against him incredible. It is Petitioner's argument that invites the Court to unreasonably apply the *Jackson* standard. The court of appeals' application of the standard, however, was consistent with, and a reasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on his sufficiency claim.

**B.     Ineffective assistance of counsel**

Petitioner next contends that counsel rendered ineffective assistance.  Petitioner raises three distinct categories of ineffective assistance claims.  First, Petitioner contends that counsel rendered ineffective assistance in connection with the preliminary examination; second, Petitioner contends his trial counsel rendered ineffective assistance; and third, Petitioner claims that appellate counsel rendered ineffective assistance for failing to raise the issues Petitioner was forced to raise in his *pro per* supplemental brief.  Different counsel represented Petitioner at the preliminary examination, at trial, and on appeal.

Although Petitioner raised his ineffective assistance of trial counsel claims in the Michigan Court of Appeals, he did not raise his arguments that counsel rendered ineffective assistance at the preliminary examination, at least he did not raise the arguments in his principal or *pro per* supplemental briefs.  (Pet'r's Appeal Br., ECF No. 3-2, PageID.115; Pet'r's *Pro Per* Supp. Br., ECF No. 3-2, PageID.143–144.)  Understandably, Petitioner did not raise his ineffective assistance of appellate counsel claims in the Michigan Court of Appeals.  It appears that Petitioner raised the claims relating to preliminary examination counsel[3] and appellate counsel for the first time in his application for leave to appeal to the Michigan Supreme Court.  (Pet'r's Br. in Support of Mich. Appl. for Leave to Appeal, ECF No. 3-2, PageID.187, 190–191.)

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*,

---

[3] The claims Petitioner raised in the Michigan Supreme Court regarding the ineffective assistance of preliminary examination counsel appeared in a single paragraph.  (Pet'r's Br. in Support of Mich. Appl. for Leave to Appeal, ECF No. 3-2, PageID.187.)  Those claims expanded to comprise several pages in Petitioner's brief in this Court.  (Pet'r's Br., ECF No. 3, PageID.50–54.)  It is fair to say that Petitioner has expanded his claims so much here that there are aspects of Petitioner's claims here that have not been raised in the state courts at all.

526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner's has provided his appellate briefs that indicate that he did not raise in the Michigan Court of Appeals the ineffective assistance of counsel issues related to the preliminary examination.

Raising the issue for the first time in the Michigan Supreme Court does not suffice. Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit repeatedly has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals but raises it for the first time on discretionary appeal to the state's highest court. *See Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009); *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010); *Granger v. Hurt*, 215 F.

App'x 485, 491 (6th Cir. 2007); *Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (6th Cir. Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368–70 (10th Cir. 1997); *Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990); *but see Ashbaugh v. Gundy*, 244 F. App'x 715, 717 (6th Cir. 2007) (declining to reach question of whether a claim raised for the first time in an application for leave to appeal to the Michigan Supreme Court is exhausted). Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts. Petitioner's application for leave to appeal was denied, and, thus, the issue was not reviewed.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has failed to present to both Michigan appellate courts. He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to exhaust preliminary examination issues in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that

14

a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition if *none* of the petitioner's claims has any merit") (emphasis in original). As set forth fully below, Petitioner's ineffective assistance of counsel issues relating to the preliminary examination have no merit; accordingly, the Court will consider, and deny relief on, Petitioner's unexhausted claim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### 1.    Ineffective assistance at the preliminary examination

Petitioner's arguments regarding the ineffectiveness of preliminary examination counsel appear at pages 21 through 25 of his supporting brief. (Pet'r's Br., ECF No. 3, PageID.50–54.) Petitioner argues that counsel failed to address the absence of an amended information on the date initially scheduled for the preliminary examination. When substitute counsel appeared on Petitioner's behalf at the rescheduled preliminary examination the next week, he failed to seek dismissal or request an adjournment. Petitioner contends that, as a result, he never received proper notice of the charges and the circuit court never properly obtained jurisdiction over him. Additionally, Petitioner claims that preliminary examination counsel failed to develop his defense and, therefore, violated his right to confront the witnesses against him.

Petitioner does not explain how the notice provided by the information fell short. The initial charges included the CSC-II offense, the most significant offense of which he was convicted. He does not claim that he did not receive sufficient notice of the CSC-assault charge to permit him to prepare a defense to that charge. Petitioner does not explain why he was entitled to dismissal of the charges at the preliminary examination or an adjournment. Petitioner does not explain why the proceedings were insufficient to permit the circuit court to obtain jurisdiction over him.

Additionally, Petitioner's claim that he was denied his "confrontation" rights at the preliminary examination has no merit because "[t]he right to confrontation is basically a trial right . . . [;] [a] preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probably cause exists to hold the accused for trial." *Barber v. Page*, 390 U.S. 719, 725 (1968). This is aptly demonstrated by the fact that the victim did not appear at the preliminary examination. Instead, the investigating officer provided all of the testimony. (Preliminary Exam. Excerpts, ECF No. 3-2, PageID.239–255.)

The premise of any claim that counsel failed to render effective assistance because he failed to object or move the court for relief is that the objection or motion have some merit. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Because Petitioner has failed to adequately identify the procedural shortcomings to which counsel should have objected—much less demonstrated their merit—his claims that preliminary examination counsel were ineffective are without foundation and he is not entitled to habeas relief.

## 2.    Ineffective assistance of trial counsel

Petitioner's complaints about trial counsel center on counsel's failure to investigate and present additional evidence, principally the surveillance videos from the hotel and the complete body-cam recordings from the investigating officer.[4]  The Michigan Court of Appeals rejected Petitioner's contention:

> Because defendant does not specifically identify or describe the evidence to which he refers, it is impossible on the existing record for us to conclude that defense counsel was ineffective.  "[A] party may not announce a position and leave it to us to discover and rationalize the basis for the claim."  *People v Williams*, 228 Mich App 546, 558; 580 NW2d 438 (1998).

> To the extent that we might assume that defendant is referring to video footage from certain hotel cameras in the parking lot and the hotel hallway, several witnesses testified at trial that no such footage was ever recovered despite efforts by law enforcement and hotel management.  Therefore, defense counsel could not have been ineffective for failing to introduce any such evidence.  Moreover, defense counsel argued, albeit unsuccessfully, that the missing evidence raised reasonable doubt.  "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work."  *People v Carll*, 322 Mich App 690, 702-703; 915 NW2d 387 (2018) (quotation marks omitted).  Alternatively, to the extent that we might assume that defendant is referring to the police officer's body camera footage, which was evidently edited down in preparation for trial, we must find that defense counsel's decision not to show the remainder of those videos also amounted to trial strategy.  See *id*.  Notably, defendant does not explain what the nonedited body camera footage would have shown.

> Moreover, in light of the overwhelming evidence of defendant's guilt, including, most appreciably, defendant's own self-incriminating statements and testimony, defendant cannot establish prejudice resulting from defense counsel's chosen strategy.  Notably, neither the hotel camera footage, assuming it even existed or was recoverable, nor the unedited police body camera footage, would have depicted what occurred within the hotel room.  Thus, defendant's ineffective-assistance-of-counsel argument lacks merit . . . .

(Mich. Ct. App. Op., ECF No. 3-2, PageID.162–163) (footnote omitted).

---

[4] An excerpt from the officer's body-cam was played for the jury.

The state appellate court's factual description of the significance of the "missing" evidence is well-grounded in the record. Certainly, Petitioner fails to identify what the video evidence might have shown to exculpate him. As the appellate court noted, the actions that resulted in Petitioner's convictions occurred in the hotel room and, thus, were not recorded on hotel surveillance video or the body-cam. The court of appeals' factual determinations are entitled to a presumption of correctness. Petitioner may overcome that presumption with clear and convincing evidence. He offers no evidence at all.

Although the court of appeals relied on state authority for the relevant standard, the standard it applied was functionally identical to the *Strickland* standard: "This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and whether, without the error, the result of the proceedings would have been different." (*Id*., PageID.162) (internal quotes and citation omitted). Moreover, the state court's application of the standard was eminently reasonable; Petitioner has failed to show that counsel's actions were professionally unreasonable or that any prejudice resulted from counsel's failure to take the actions Petitioner now urges. Because Petitioner has not and cannot demonstrate that the state court's determination of the issue is contrary to, or an unreasonable application of, *Strickland*, he is not entitled to habeas relief.

Petitioner's claims that trial counsel rendered ineffective assistance have expanded in this Court. Petitioner now challenges counsel's efforts to impeach the other witnesses or develop other evidence. Those challenges have not been fully exhausted in the state courts. Again, however, Petitioner fails to show what any additional efforts might have accomplished. Whether or not counsel's failure were professionally unreasonable, Petitioner has failed to demonstrate any

prejudice. The evidence offered by the victim, corroborated by the testimony of the officer, the hotel guests, and the hotel employees, corroborated by the condition of the room and the pictures of the victim, and corroborated by Petitioner's own testimony, was so overwhelming that Petitioner's call to challenge the witnesses on peripheral details could not possibly have resulted in any different outcome.[5]

### 3. Ineffective assistance of appellate counsel

Petitioner also contends that appellate counsel rendered ineffective assistance because counsel did not raise the issues that Petitioner raised on appeal in his *pro per* submissions. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

---

[5] Indeed, it is noteworthy that Petitioner rejected a plea bargain that would have required him to plead guilty to fourth-degree criminal sexual conduct, a one-year misdemeanor. Petitioner declined the offer, apparently in the hope that the victim would not show for trial as she had failed to show for the preliminary examination. Petitioner's choice to forego the plea backfired, leaving Petitioner and his counsel with almost no hope for success at trial.

Petitioner cannot make that showing here.  As set forth above, and below, the issues Petitioner raised in his *pro per* submission have no merit.  Appellate counsel's failure to raise them, therefore, "is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752. Petitioner is not entitled to habeas relief on his claim that appellate counsel rendered ineffective assistance.

### C.    **Prosecutorial misconduct**

Petitioner's prosecutorial misconduct allegations have also evolved as he has proceeded from court to court.  The court of appeals summarized Petitioner's argument on appeal as follows:

> Defendant . . . argues that the prosecutor committed misconduct by presenting testimony from a police officer that the prosecutor knew was false, by presenting hearsay testimony from the inmate, and by unfairly opining about certain evidence during closing summation, particularly in relating how the television in the hotel room was broken.

(Mich. Ct. App. Op., ECF No. 3-2, PageID.163.)   That summary captures the essence of Petitioner's arguments.  (Pet'r's *Pro Per* Suppl. Br., ECF No. 3-2, PageID.145.)  Petitioner raised the same arguments in his Michigan Supreme Court brief.  (Pet'r's Mich. Br., ECF No. 3-2, PageID.192–194.)  In this Court, however, Petitioner's two-page argument is now thirteen pages long.  (Pet'r's Br., ECF No. 3, PageID.73–85.)  Although Petitioner supplies a lot more detail, his arguments still boil down to three issues: the prosecutor presented testimony knowing it to be false, the prosecutor offered improper evidence in the form of the jailhouse informant's testimony, and the prosecutor's characterization of the evidence during closing arguments was not supported by the testimony.  Petitioner's buries one new issue in his arguments in this Court—he contends that

the prosecutor violated the requirements of *Brady v. Maryland*, 373 U.S. 93 (1963), when he failed to present the complete body-cam video and, possibly, the hotel surveillance recordings.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935). "[A] prosecutor's comments violate the defendant's right to due process only if, *in context*, they 'undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice.'" *Winowiecki v. Gidley*, No. 20-1461, 2020 WL 6743472, at *2 (6th Cir. Sept. 8, 2020) (quoting *Young*, 470 U.S. at 16) (emphasis added); *see also United States v. McQuarrie*, 817 F. App'x 63, 81 (6th Cir. 2020) ("[C]ontext is key . . . .").

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

### 1. Knowing use of perjured testimony

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted). Petitioner bears the burden of demonstrating that the testimony was actually perjured. *Id.* "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

The Michigan Court of Appeals addressed Petitioner's claim that the prosecutor knowingly used perjured testimony as follows:

> "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "If a conviction is obtained through the knowing use of perjured testimony, it 'must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.*, quoting *United States v Agurs*, 427 US 97, 103; 96 S Ct 2392; 49 L Ed 2d 342 (1976). In this case, there is no evidence that a law enforcement officer perjured himself. Indeed, the officer's testimony was consistent with the other witnesses' testimony and with the police body camera video that captured the officer's response. Defendant provides no factual basis for us to conclude otherwise.

(Mich. Ct. App. Op., ECF No. 3-2, PageID.163–164.) Petitioner does not respond to the court of appeals' determination that there is no evidence of perjury in the record. He simply points out perceived inconsistencies between the officer's preliminary examination testimony and his trial testimony, between the officer's report and his testimony, between the officer's testimony and the testimony of other witnesses, and between the officer's testimony and Petitioner's recollection of the events. Additionally, Petitioner has now expanded his argument to point out inconsistencies in the trial testimony of other witnesses. As noted above, however, identifying inconsistencies in testimony does not demonstrate that the testimony is false and it certainly does not suffice to show that the prosecution knew the testimony to be false. Accordingly, Petitioner has not met his burden to establish that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. He is not entitled to habeas relief on this claim.

### 2. Eliciting hearsay testimony from the jailhouse informant

The court of appeals also rejected Petitioner's claim that the prosecutor impermissibly elicited hearsay testimony:

Likewise, defendant's argument that the prosecutor committed error by offering inadmissible hearsay testimony from the inmate lacks merit. Defendant asserts that the inmate's testimony was not properly offered as a statement against interest. See MRE 804(b)(3) (allowing the admission of "[a] statement which was at the time of its making so far . . . tended to subject the declarant to civil or criminal liability" when the declarant is unavailable to testify). However, the inmate's testimony contained admissions against defendant as a party opponent and thus could not contain hearsay. MRE 801(d)(2) (stating that "the party's own statement, in either an individual or a representative capacity" does not constitute hearsay under the Rules of Evidence). Therefore, the prosecutor could not have committed error by offering admissible evidence.

(Mich. Ct. App. Op., ECF No. 3-2, PageID.164.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' conclusion that the jailhouse informant's recounting of Petitioner's admission was not impermissible hearsay is, therefore, axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552

25

(6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. There is nothing inherent in the admission of hearsay testimony generally that offends fundamental principles of justice. In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state court of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Here, as in *Desai*, the state court held that the evidence "fell within an established hearsay exception," in this case for admissions by a party-opponent under Michigan Rule of Evidence 801(d)(2). *Id*. at 631. "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law." *Id*. at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Moreover, Petitioner's claim is one step removed from the issue as considered and resolved in *Desai*. The issue is not simply whether the evidence was properly admitted; the issue is whether the prosecutor committed misconduct in eliciting the testimony. In that regard, "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge . . . ." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).

For all of these reasons, Petitioner has failed to establish that the state appellate court's rejection of this prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on the claim.

### 3. Closing arguments mischaracterized the evidence

Petitioner also claims that the prosecutor misrepresented the evidence in his closing argument. "[T]he government may not rely on prejudicial facts not in evidence when making its closing arguments." *United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007). Nonetheless, "[a] prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). The Court has carefully reviewed the closing argument excerpts Petitioner has provided and concludes that the prosecutor's arguments here fall into the category of "reasonable inference from the evidence" and not the category of "prejudicial facts not in evidence." The Michigan Court of Appeals reached the same conclusion:

> Lastly, nothing about the prosecutor's closing argument was so inflammatory as to prejudice defendant or deprive him of a fair and impartial trial. A prosecutor has "great latitude" in making arguments and statements at trial. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks omitted). While afforded this "great latitude," the prosecutor may not argue facts not in evidence or mischaracterize the evidence. *Id.* at 282-283. However,

27

prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Bailey*, 310 Mich App 703, 722; 873 NW2d 855 (2015) (quotation marks omitted). In this case, the record reflects that the prosecutor summarized the evidence regarding the destruction of the television consistently with the victim's testimony. Additionally, such summation could not have been prosecutorial error because the defendant was acquitted of the malicious destruction of property charge.

Moreover, reversal is not required when the trial court clearly instructs the jury that the lawyers' statements are not evidence. See *Meissner*, 294 Mich App at 457. The record reflects that the trial court explicitly instructed the jury that the prosecutor's remarks during argument were not evidence and were only meant to help the jury understand each side's legal theories. The trial court also adequately instructed the jury that their role was to be the fact-finder. The jury is presumed to have fully understood and followed these instructions. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Therefore, defendant has not shown any incidents of prosecutorial misconduct or error.

(Mich. Ct. App. Op., ECF No. 3-2, PageID.164.)

The court of appeals' determination that the prosecutor did not mischaracterize the records is well-founded on the record supplied by Petitioner. Petitioner has not provided any evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded that determination under the AEDPA. Moreover, the appellate court's determination that jurors are presumed to follow the instructions is entirely consistent with clearly established federal law. *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Therefore, Petitioner is not entitled to habeas relief on this claim.

### 4. *Brady* violation

Petitioner mentions that the prosecutor may have violated his obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at

87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting United States v. *Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).  "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

Petitioner does not clearly identify what evidence the prosecutor should have turned over to the defense that it failed to disclose.  His argument frequently focuses on the hotel surveillance videos and the complete recording from the officer's body-cam, so the Court presumes those items are the focus of Petitioner's *Brady* argument as well.  The record clearly

indicates that the police diligently sought the hotel surveillance videos, but the hotel was not able to provide them. Thus, the prosecutor did not "suppress" the hotel surveillance videos. Moreover, there is nothing in the record to indicate that the videos would have favored Petitioner—Petitioner's suggestion to the contrary is mere speculation.

With regard to the complete body-cam recording, there is nothing in the record to support Petitioner's claim that the prosecutor did not make the entire recording available to defense counsel. Only an excerpt was played for the jury, but that does mean Petitioner's counsel did not have access to the entire recording. Moreover, once again, there is nothing in the record to indicate that the recording, in its entirety, would have favored Petitioner any more than the excerpt did. Petitioner merely speculates that it might have. Petitioner cannot "establish a *Brady* violation by merely speculating that the government was in possession of evidence that may have been favorable to him." *United States v. Thompson*, 758 F. App'x 398, 404 (6th Cir. 2018).

Petitioner has failed to show that the prosecutor committed misconduct by withholding favorable evidence in violation of *Brady*. Petitioner is not entitled to habeas relief on this claim.

## IV.     Trial court errors

As with Petitioner's other habeas issues, his complaints about the trial court have evolved as he proceeded through his appeals to this habeas petition. In this Court, Petitioner argues that the trial judge improperly handled his case from preliminary examination through trial, that the court never gained subject matter jurisdiction over his prosecution, that the judge was part of the "four-way" conspiracy (judge, prosecutor, police, and defense counsel) to convict him, that the judge committed thirteen specific errors in ruling on objections to the admission of evidence, the

judge erred in refusing to give an instruction on spoliation of evidence with regard to the hotel surveillance videos, the trial judge was biased against him, and the trial court disregarded Petitioner's post-judgment requests for documents. (Pet'r's Br., ECF No. 3, PageID.86–94.)

Petitioner's laundry list of complaints in this Court stands in stark contrast to his five-paragraph argument in the court of appeals. Petitioner's argument in the court of appeals appears to be directed to one issue: the trial court's instruction permitting the jurors to consider circumstantial evidence interfered with the presumption of innocence. (Pet'r's Pro Per Suppl. Br., ECF No. 3-2, PageID.150–151.) Petitioner does not raise that argument in this Court; indeed, it does not appear he raised that argument in the Michigan Supreme Court either. Petitioner's argument in the Michigan Supreme Court instead includes most, if not all, of the arguments he raises in this Court. Because Petitioner never fairly presented the "trial court error" arguments he presents here to all levels of the Michigan appellate court system, the issues are unexhausted and this Court's review is *de novo*.

### 1. Judicial bias

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)

(internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009).

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008)); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975).

In *Liteky v. United States*, 510 U.S. 540 (1994),[6] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S., at 583, 86 S. Ct., at 1710. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or

---

[6] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.  An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German-American defendants:  "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted).  Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-556.

### a.    One judge for the preliminary examination and the trial

In his principal "bias" argument, Petitioner does not allege any of the objective indicia of constitutionally impermissible bias.  Instead, he relies upon the procedural oddity that, in the Berrien County Circuit Court, circuit court judges also function as district court judges who preside over arraignment and preliminary examination proceedings.  Petitioner suggests that because his trial judge presided over the arraignment and preliminary examination, the was biased against Petitioner.  There are certainly some state statutes and constitutional provisions that are implicated by the practice of the Berrien County Circuit Court.  When it comes to identifying evidence of the bias, however, Petitioner offers nothing more than the Berrien County practice and then the rulings of the trial court.

There is nothing inherent in the practice of having the same judge decide the probable cause issue raised in a preliminary examination proceeding and preside over a jury trial of the charges that demonstrates bias.  The state and federal courts have identified potential problems that might arise in procedurally distinguishable circumstances.  *See People v. Ramsey*,

187 N.W.2d 887 (Mich. 1971); *Murchison*, 349 U.S. at 133. In *Ramsey*, the trial judge, acting as the trier of fact, looked at preliminary examination testimony before finding the defendant guilty of an offense. *Ramsey*, 187 N.W.2d at 888. The Michigan Supreme Court held that this violated a Michigan statute and the constitutional right of a defendant to confront and cross-examine witnesses. *Id.* The court also cited a court rule that "Whenever any Judge shall have acted as Examining Magistrate in any case he shall not be assigned to the trial of that case, except with the expressed consent of counsel for all parties entered upon the record in open Court." *Id.* But *Ramsey* does not apply here because the judge in Petitioner's case did not act as the trier of fact. In other words, the individuals who decided Petitioner's guilt (the jury) did not rely on evidence from his preliminary examination proceeding. Consequently, having the same judge for both the preliminary examination and the trial had no impact on his right to confront and cross-examine witnesses.

In *Murchison*, a judge, acting as the grand jury, charged one person with perjury and another with contempt of court. The same judge then tried and convicted both of them. *Murchison*, 349 U.S. at 134–35. The Supreme Court held that this was improper, in part, because the judge's conviction relied upon evidence that he recalled from closed grand jury proceedings that was not part of the record and could not be refuted by other witnesses. *Id.* at 138. In effect, the judge acted as both a witness and a fact-finder, and this prevented the individuals charged from cross-examining a key witness. *Id.* at 139. The Court also expressed concern that the judge would not be "wholly disinterested in the conviction or acquittal of the accused" because the judge, in his role as a single grand juror, was effectively the prosecutor, and was "even more a part of the accusatory process than an ordinary lay grand juror." *Id.* at 137.

However, *Murchison* is distinguishable because the trial judge in Petitioner's case played no role in charging Petitioner with a crime; thus, he was not interested in Petitioner's conviction in the same way that a prosecutor would be. Nor did the trial judge determine Petitioner's guilt. Thus, he could not have relied upon evidence outside the record—evidence that would have denied Petitioner the opportunity to confront and cross-examine a witness—to convict Petitioner.

Petitioner cites no federal authority, let alone authority from the United States Supreme Court, holding that a judge cannot preside over both the preliminary examination and the jury trial of the same defendant. Consequently, Petitioner has not established that the state court's decision rejecting his claim is contrary to, or an unreasonable application of, clearly-established federal law.

To the extent Petitioner intended to rely not on bias, but on violations of state statutes and state constitutional provisions, his challenge is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The issue is simply not cognizable on habeas review.

Even if the issue were cognizable, Petitioner would not be entitled to relief. Petitioner's argument implies that the trial judge, a circuit court judge, exceeded her authority under state law by conducting the preliminary examination because only district courts have jurisdiction to conduct such examinations. That is generally true under Michigan Compiled Laws § 600.8311(d). However, trial courts can adopt plans of concurrent jurisdiction under Michigan Compiled Laws § 600.401. The Berrien County Circuit Court has done just that. *See* Mich. Admin. Order No. 2004-02. Consequently, judges in Berrien County could "act in all proceedings in the circuit court, district court, and probate court." *People v. Walker*, No. 322133, 2016 WL 97898, at *5 (Mich. Ct. App. Jan. 7, 2016). Thus, Berrien County's practice in Petitioner's case did not violate state law.

Petitioner is not entitled to habeas relief on this claim.

### b. General bias and the "four-way" conspiracy

Petitioner's remaining claims of bias have no record support. Petitioner merely references the Court's rulings that did not go in Petitioner's favor and concludes that the trial judge must have been biased. A bias claim based solely on judicial rulings is plainly insufficient under *Liteky*. That is particularly true where Petitioner fails to make a compelling argument that the judge's rulings were anything but correct. Accordingly, Petitioner has failed to demonstrate that his due process rights were violated by judicial bias.

### 2. Subject matter jurisdiction

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976). The Michigan courts describe the concept of subject matter jurisdiction as follows: "Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case."

*People v. Lown*, 794 N.W.2d 9, 24 (Mich., 2011) (internal quotation marks and emphasis omitted).

"Michigan circuit courts are court of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id.* Procedural deficiencies, including deficiencies in the felony complaint, affect personal jurisdiction, not subject matter jurisdiction. *See, e.g., Lown*, 794 N.W.2d at 24 (violation of the 180-day rule); *People v. Boyce*, No. 318859, 2016 WL 97896 (Mich. Ct. App. Jan. 7, 2016) (alleged deficiencies in the felony complaint, warrant, and return); *see also Sumpter v. Atkins*, No. 12-13958, 2013 WL 4016494 (E.D. Mich. Aug. 6, 2013) (alleged deficiencies in the form and content of the criminal complaint). Where the court has subject matter jurisdiction over the charged offense and the defendant appears before the court, even prior procedural irregularities will not divest the court of personal jurisdiction over the defendant. *People v. Burrill*, 214 N.W.2d 823, 825 n.2 (Mich. 1974). Petitioner's suggestion that he is entitled to habeas relief because of questions about the trial court's subject matter jurisdiction are plainly meritless.

### 3. Errors in the admission of evidence

Petitioner lists thirteen instances where the trial judge allowed the admission of evidence over Petitioner's objection or excluded evidence that Petitioner hoped to admit. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As noted above, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting

*Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76

(6th Cir. 2017). This approach accords the state courts wide latitude in ruling on evidentiary

matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided

the evidentiary question differently. The court may only grant relief if Petitioner is able to show

that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme

Court on a question of law or if the state court decided the evidentiary issue differently than the

Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860.

Petitioner does not even try to meet this difficult standard. Instead he claims only that the trial

court erred in its rulings, apparently as a matter of state law. Thus, Petitioner has failed to raise a

cognizable habeas claim.

### 4.     Instruction regarding spoliation

Petitioner urged the trial court to read a jury instruction regarding the spoliation of

evidence. Petitioner contended that the prosecutor's failure to produce the hotel surveillance

videos without excuse warranted an inference that the evidence would have been adverse to the

prosecution. There is no Michigan standard criminal jury instruction regarding spoliation, but

there is a standard civil jury instruction. Mich. Std. Civ. Jury Instr. 6.01.[7] That instruction is

appropriate where:

1.     the evidence was under the party's control and could have been produced;

2.     the party lacks a reasonable excuse for its failure to produce the evidence;
       and

---

[7] The absence of a standard "spoliation" instruction in the context of criminal trials is not surprising. Under *Brady*, the prosecutor's failure to provide material evidence does not just warrant an inference, it calls into question the constitutional validity of the entire proceeding. *See People v. Argo*, No. 340687, 2018 WL 6711329 (Mich. Ct. App. Dec. 20, 2018); *People v. Felder*, No. 324621, 2016 WL 1072200 (Mich. Ct. App. Mar. 17, 2016).

3.      the evidence is material, not merely cumulative, and not equally available
to the other party.

*Ward v. Consolidated Rail Corp.*, 693 N.W.2d 366, 371–372 (Mich. 2005). The trial court

declined to give such an instruction because the evidence showed the video was never in the control

of the prosecutor or the police, they had no means to produce it—in fact, even the hotel could not

retrieve it—and the police had diligently sought the production of the video, to no avail. (Trial Tr.

III, ECF No. 3-3, PageID.599–600.)

Typically, a claim that a trial court gave an improper jury instruction is not

cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so

infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431

U.S. 145, 155 (1977). *See also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve

as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due

process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders*, 221 F.3d at

860. If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary

to federal law. *Id.* Petitioner has failed to show that the trial court's refusal to read this instruction

was error under state law and he certainly cannot show that the absence of the instruction infused

his trial with unfairness.

## 5.      Post-judgment refusals to supply documents

Petitioner attaches documents to his brief, indicating that he sought the trial court's

assistance in obtaining documents from non-party witnesses, his own attorneys, the prosecutor,

and the court, long after judgment was entered and even after the Michigan Court of Appeals

issued its opinion. (Documents, ECF No. 3-3, PageID.645–663.) The court denied Petitioner's

requests because Petitioner, through his appellate counsel, had already been given all documents.

Most of the documents Petitioner sought—i.e., the hotel surveillance videos and records of his

"grand jury" proceedings—simply did not exist. Petitioner fails to allege any constitutional entitlement to the documents he sought from the trial court. Accordingly, his claim is not cognizable on habeas review.

## V.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial

of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## VI.     Pending motions

Petitioner has filed several motions in addition to his petition.

### A.     Motion for leave to proceed *in forma pauperis* (ECF No. 2)

Petitioner has requested leave of court to proceed in forma pauperis (ECF No. 2) under 28 U.S.C. § 1915(a)(1) and has filed an affidavit of indigence. The filing fee for a habeas corpus action is $5.00. 28 U.S.C. § 1914(a). The Court should only grant leave to proceed in forma pauperis when it reasonably appears that paying the cost of this filing fee would impose an undue financial hardship. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988). It is not unreasonable to require a prisoner to devote a small portion of his discretionary funds to defray a fraction of the costs of his litigation. *See Lumbert v. Ill. Dep't of Corr.*, 827 F.2d 257, 267 (7th Cir. 1987).

Petitioner has filed a trust account statement, which shows that over the past six months Petitioner has had an average monthly deposit of $48.33. At the time of filing his petition, Petitioner had a spendable balance of $31.83. Petitioner's financial documents indicate that he has sufficient resources to pay the $5.00 filing fee. Therefore, Petitioner is not entitled to proceed in forma pauperis in this action. The Court will allow Petitioner 28 days to pay the $5.00 filing fee.

### B.     Motion for evidentiary hearing (ECF No. 4)

Petitioner has moved for an evidentiary hearing. He does not identify the issues that require an evidentiary hearing or why the hearing is necessary to resolve his habeas claims. Generally, habeas corpus actions are determined on the basis of the record made in the state court. See Rule 8, Rules Governing § 2254 Cases. An evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See*

*Sanders*, 221 F.3d at 852. Petitioner has provided virtually the entire state court record with his petition and supporting brief. The Court concludes that the record and state-court findings are adequate under § 2254(e). Therefore, no evidentiary hearing will be conducted, and the present motion will be denied.

### C.        Motion for leave to file excess pages (ECF No. 5)

Petitioner seeks leave to exceed the page limitation. The page limitation he references appears in the Federal Rules of Appellate Procedure and it does not apply to habeas petitions or briefs in support of such petitions. The Court has reviewed all of the dozens of pages of argument and hundreds of pages of exhibits that Petitioner has filed. The Court will deny Petitioner motion as unnecessary.

### D.        Motion for oral argument (ECF No. 6)

Section 2253 of Title 28 and Rule 4 contemplate a preliminary review of the petition and supporting materials. Neither the statute nor the rule foreclose oral argument, but they do not require it either. On preliminary review, the Court has concluded that Petitioner is not entitled to relief. Oral argument is simply not necessary. Accordingly, the court will deny Petitioner's motion.

### E.        Motion to appoint counsel (ECF No. 7)

Indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires. Rule 8(c), Rules Governing Section 2254 Cases.

The Court has considered the complexity of the issues and the procedural posture of the case and concludes that the assistance of counsel is not necessary. Petitioner's motion for a court-appointed attorney will therefore be denied.

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability and Petitioner's motions.

Dated:    June 23, 2021          /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE